IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHERYL DESHIELDS, )
)
Plaintiff, )
)
v. ) Case No. CIV-07-333-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Cheryl DeShields (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on July 12, 1957 and was 49 years old at the time of the ALJ's decision. Claimant has worked in the past as a newspaper advertising sales person. Claimant alleges an inability to work beginning March 31, 2003 due to injuries to her back, knees, shoulder, elbow, as well as a spastic colon and depression.

**Procedural History**

On April 14, 2005, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's date of last insurance expired on March 31, 2003. Claimant's application was denied initially and upon reconsideration. On

October 16, 2006, a hearing was held before ALJ John Volz in Tulsa, Oklahoma. By decision dated March 30, 2007, the ALJ found that Claimant was not disabled during the relevant period. On September 18, 2007, the Appeals Council declined to review the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing, and retained the residual functional capacity to perform her past relevant work as a newspaper advertising sales person.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant met a listing; (2) failing to properly evaluate and afford the appropriate weight to Claimant's treating physician's opinions; and (3) finding Claimant retained the residual functional capacity to perform a full range of sedentary work.

### Evaluation of Claimant's Condition for a Listing

Claimant first asserts the ALJ should have determined that her condition met a listing at step three of the sequential evaluation. On August 23, 2000, Claimant underwent arthroscopic surgery to repair a torn medial meniscus in her left knee. (Tr. 189-191). On

4

October 26, 2000, Claimant had arthroscopic surgery to repair a torn medial meniscus tear in her right knee. (Tr. 195-197).

On November 11, 2000, Claimant's progress after the procedure on the right knee was evaluated by Dr. David E. Nonweiler. He states Claimant reported no problems, with her knee improving. She told Dr. Nonweiler she was sore at first but that it improved. She also inquired about physical therapy. Dr. Nonweiler noted Claimant had a range of motion in her right knee from zero to 125 degrees, had no effusion in her knee, had mild medial and lateral parapatellar tenderness, and had mild medial and lateral joint line tenderness. Dr. Nonweiler recommended a range of motion and strengthening exercises through physical therapy. He also released Claimant to work so long as she did not engage in kneeling, squatting, climbing, and used stairs minimally. (Tr. 221).

In July of 2001, Claimant was referred by her primary physician, Dr. Griffith Miller, for an MRI of her right knee after she was walking up stairs in her home and her right knee snapped backwards and she fell. The MRI revealed a torn meniscus. Physical therapy was recommended as treatment. She received exercises, ultrasound, electrical muscle stimulation, heat, and ice to her right knee, without relief. Physical therapy was discontinued and Claimant wore a brace on her right knee. (Tr. 350-351).

Claimant suffered further injury to her knees in 2004 and

5

2005. However, since these problems occurred after the date of last insured status, the ALJ found they were outside the scope of his consideration. (Tr. 17). The ALJ also acknowledged Claimant was diagnosed with adjustment disorder with mixed anxiety and depressed mood in July of 2005. Again, this finding was made after the expiration of insured status and the medical record indicates Claimant had no severe mental impairment from her onset date through the date of last insurance and, therefore, was outside the scope of the ALJ's period for consideration. Id.

At the hearing before the ALJ, Claimant offered the medical expert testimony of Dr. Subramaniam Krishnamurthi. After reviewing the medical records, Dr. Krishnamurthi found Claimant was suffering from degenerative arthritis of the knees, chronic back pain, asthma, hypertension, and anxiety and depression. However, he identified her main problem as degenerative arthritis of the knees, which he found existed in 2003 as a result of a knee injury in 1998. (Tr. 539).

Dr. Krishnamurthi provided an RFC from 2003, considering Claimant's condition. He stated she could sit six hours out of an 8 hour work day, stand and walk together two hours out of an 8 hour day, lift and carry a maximum of 10 pounds with no limitation on fingering. He also stated Claimant could occasionally bend, stoop, crawl. (Tr. 541-542).

At the hearing, Claimant's attorney suggested records dating

back prior to 2003 were missing from the medical record considered by Dr. Krishnamurthi in his RFC evaluation. He was afforded an opportunity to supplement the record with this additional medical evidence. (Tr. 18, 543-544).

Under examination at the hearing by Claimant's counsel, Dr. Krishnamurthi stated he considered Dr. Jack Brown's assessment dated October 16, 2006. Dr. Brown proffered Claimant's condition as it existed in March of 2003 precluded her from sitting for greater than 30 minutes at a time, standing or walking greater than 30 minutes at a time. Dr. Brown also wrote that Claimant could not sit for greater than one hour during an 8 hour work day, stand for greater than one hour in an 8 hour day, or walk for more than one hour in an 8 hour day. Dr. Brown also estimated Claimant in March of 2003 could lift or carry 0-5 pounds infrequently, and was never to lift or carry over 6-10 pounds. He also restricted her repetitive motion or movement using her upper extremities including grasping, gripping, pushing or pulling or repetitive motion of her lower extremities. (Tr. 509).

Dr. Krishnamurthi concluded the medical record did not support such a restrictive RFC as proposed by Dr. Brown. He took particular issue with the finding that Claimant could not sit for an extended period of time. (Tr. 544-545).

In his decision, the ALJ found Claimant suffered from the severe impairment of status post bilateral arthroscopy of the

knees. He also found Claimant's impairment did not meet Listing 1.02, finding her impairment does not result in the listing's requirement of an inability to ambulate effectively. (Tr. 15). He also concluded the medical evidence supported that Claimant retained the RFC necessary to perform her past relevant work as an advertising sales person for a newspaper, given that even Claimant confirmed it was a sedentary, sitting job. (Tr. 19).

Initially, this Court agrees with Claimant that an ALJ is required to discuss his reasoning in finding a particular condition does not meet a listing at step three. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). However, Defendant directs this Court to the case of Fischer-Ross v. Barnhart, 431 F.3d 729 (10th Cir. 2005), wherein the court determined "an ALJ's findings a other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." Id. at 733.

The relevant listing identified by the ALJ and not challenged on review by Claimant is Listing 1.02, which states in pertinent part:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

* * *

b. What We Mean by Inability to Ambulate Effectively

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The question is whether the ALJ's findings on Claimant's RFC support his stated conclusion that the requirement of inability to ambulate effectively for Listing 1.02 is not met. No evidence appears in the file to indicate Claimant uses assistive devices to

accomplish walking. Further, Claimant's testimony indicates she falls frequently, experiences shooting pain and swelling, could walk for 25 feet or for a period of 15 minutes at a time. (Tr. 525-527). She also testified her right leg is starting to turn in, putting pressure on her ankle. (Tr. 536).

Of course, this Court has the same problem as the ALJ in the evaluation. The relevant period for evaluation ended with the expiration of Claimant's insured status in March of 2003, mandating that this Court view Claimant's condition at that time and not as it currently stands. The record in hindsight from 2003 does not indicate Claimant lacked an inability to ambulate effectively as required by Listing 1.02. While the evidence indicates a steady degeneration in Claimant's condition, she was walking effectively at the time her insured status expired. Therefore, this Court finds no error in the ALJ's evaluation at step three.

### Treating Physician's Opinion

Claimant next alleges the ALJ failed to consider the opinion of her treating physician, Dr. Jerry A. Nelms. Claimant's counsel submitted a letter from Dr. Nelms dated October 16, 2006 which states he treated Claimant after an injury on October 8, 1998. He states Claimant received treatment and was referred to an orthopedic specialist. He states "[s]he was taken off work and was in my opinion totally disabled from that time in 1998 until the present." He estimated Claimant's restrictions based upon his

10

examination in December of 1998 as sitting for no more than 30 minutes at a time and one hour in an 8 hour day, standing or walking no more than 30 minutes at a time and one hour for each activity in an 8 hour day. Dr. Nelms restricted Claimant's lifting to zero to 5 pounds infrequently, and was never to lift over 6-10 pounds. He also restricted Claimant's repetitive movements in both upper and lower extremities. (Tr. 511).

It is well-established that any time an ALJ rejects the opinion of a treating physician or fails to give it controlling weight, he must provide substantiation for that rejection. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Defendant contends the ALJ considered "Dr. Nelms' February 16, 2001 treatment records in which Dr. Nelms stated that Plaintiff could work and only restricted her from kneeling or squatting." Actually, the treatment record referenced by the ALJ and Defendant is that of Dr. Nonweiler, not Dr. Nelms. (Tr. 216). The ALJ fails to mention Dr. Nelms' opinion or prior treatment of Claimant in his decision. While the wording of the October 16, 2006 letter is

somewhat coy in its stated period of restriction, it muddles the record sufficiently to require discussion by the ALJ. On remand, the ALJ shall consider Dr. Nelms' opinions.

Defendant also contends the ALJ failed to consider the opinions of Dr. Brown. The record indicates the opinions of Dr. Brown with regard to Claimant's physical restrictions was considered in the examination of the medical expert at the administrative hearing. In a letter which bears amazing similarity to that of Dr. Nelms, Dr. Brown established restrictions upon Claimant's physical abilities dating back to March of 2003. The only criticism this Court lodges of the ALJ's reference to Dr. Brown's opinions is that he failed to engage in the weight analysis required under the law. On remand, he shall provide the appropriate rationale for rejecting a treating physician's opinions, if he maintains that position.

With regard to the alleged treatment of Claimant's mental condition by Dr. Brown prior to the expiration of insured status, the ALJ shall re-examine the record for references to treatment of depression during the relevant period. He shall consider such evidence in reassessing whether Claimant's mental status constituted an impairment at that time.

### RFC Evaluation

Because consideration of additional evidence has been mandated

in this opinion, the RFC assessed by the ALJ should also be reconsidered in light of the opinions of Claimant's treating physicians.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE